Grundy, Ch. J.
delivered the opinion of the court.* —We could never think of putting an officer to the trouble and expence of defending himself upon a charge, while we were satisfied, if proved, it would not be a sufficient cause for removing him from office. We are of opinion that the proceeding under this section of the constitution, must be confined to misconduct in office.
The constitution, art. 6, 4, provides, that “laws shall be made to exclude from office, and from suffrage, those who shall thereafter be convicted of bribery, perjury, forgery, or other high crimes and misdemeanors.” As far aS the legislature have acted, or may act, under ⅛⅛ latter section of the constitution, it would require a conviction under a regular prosecution for thecrime charged, and the production of the record of conviction, before this court would take up the Subject. To determine that this cOUrt could, for every misconduct in private life committed by a clerk, remove him from office, would be putting every clerk in the arbitrary power of the court, and might be exercised to the worst of purposes. No process can issue upon the two first charges. We will take time to consider of the others.
Gn the next day, he proceeded. : — The last charge, that the defendant is an alien, is not a misbehaviour in office. It cannot therefore be inquired into, in this mode of proceeding. If it be a disqualification to his holding the office, the court are inclined to think the appointment void, ab initio ; and that the inferior court ought to proceed to make a new appointtnent.† Process must issue on the other charges.
The process will be, a summons to the defendant, to shew causé, on the —-day of the hext month, why he .should not be removed from the office of clerk of the Ohio circuit court, and must recite the charges. The clerk will also enter up an order, that either party may *232 have subpoenas for witnesses to appear here on the day when the process against the defendant is returnable^ The witnesses must attend and give evidence orally, as in a common law issue.
January 19th 1807.
Qn the return day of the process, the cause was continued until the next day ; and on that day, the attorney-general moved for a continuance Of the cause until the next term.
The coiirt required of him to state what he expected to prove by the absent witnesáes, that they might judge their materiality (a). .
On the succeeding day the attorney-general filed an affidavit, stating the steps that had been taken to procure the attendance of the absent witnesses, and showed their materiality by their affidavits, taken for the purpose of instituting this prosecution. The court determined the ground for a continuance was sufficiently made out; but reserved for further consideration, the question of costs j> and whether the person at whose instance the prosecution was carried on, could be, of ought to be made or considered a party to the caiise; and if so, how far he ought to be subjected to costs ; and desired the counsel on each side to think of these points.*
The counsel for the defendant, moved the court to proceed with the trial of those charges, relative to which it did not appear that material witnesses were absent; alleging, thát it would be extremely difficult to procure all the witnesses to ,every charge at one time, and that several of the charges had ho connection, and could be disposed ol separately.
The Court considered a division of the cause, and separate trials, as a novelty ; and that it was safer to try the whole of the cause at once. They, however, consented to hear the witnesses that were then attending; but left every point open to further evidence ⅞ and reserved a decision on every charge, until the whole evidence was cdrhpleted. By the consent of the counsel concerned, the clerk took down in writing, what the witnesses stated, to prevent mistakes.
In the course of the proceedings this day, the eOürt delivered the following opinion:

April 18th.

‘ The laws allowing clerks fees, are so intricate and difficult of application in practice, that it is not probable the members of the court would all concur in á construction of them, in all their parts. An overcharge made by a clerk, will not of itself be deemed cause for a removal from office. The party injured is to be redressed by proceeding for the penalties imposed; but if it can be shewn, that the overcharge was made from corrupt motives, it will be different;
At this term, the cause Came On; and was fully heard on the evidence ; and was argued by the attorney-general for the Commonwealth, and by Clay and Allen for the defendant.
Edwards, Ch. j.
delivered the following opinion of the court: — This is an application to remove the defendant from the office of clerk of the Ohio circuit court, for various charges exhibited ; some of which have been deemed not proper subjects of inquiry ; as they related to his conduct as an individual, not as an officer ; others have been abandoned, or are unsupported by proof; and two remain, which command the consideration of this eourt.
The first of these is, “ For erasing from the panel of grand jurors, at the April term of the Ohio circuit court, the name of Benjamin Field, after it was returned by the sheriff, without the knowledge or consent of the eourt, and from private and personal motives.” To support this charge, proof has been made, that the defendant apprehended that a prosecution was about to be commenced against him ; had understood that said Field had been summoned as a grand juror, and had applied to the sheriff to take said Field’s name off the panel ; that the sheriff refused to do so ; that the defendant applied to said Field, and requested him not td serve on the jury ; alleging; as the reason for such applications to the sheriff and the juror; that he conceived the juror was prejudiced against him (the defendant) • the juror expressed a willingness to withdraw, provided he could be permitted lawfully so to do ; and suggested that there were only two ways by which that end Could be attained : by application to the court, or the sheriff’s omitting to call him. The sheriff, after all these conversations, returned the panel in the usual manner, with the name of said Field on the panel ; left it cm *234 the clerk’s table, and a few minutes thereafter, received the panel for the purpose of calling the jurors ; that the name of said Field was erased ; in consequence of which, he failed to call the said juror ; that the defendant confessed he had made the erasure of said juror’s name.
Upon this testimony, it becomes necessary to inquire whether the act complained of constitutes official misconduct. To determine upon which, the duties of the sheriff and of the clerk, relative to the panel, are brought into view. The statute requires “ the sheriff of every county within which a court of criminal jurisdiction is to Re holden, before every meeting of such court, to Summon twenty-four discreet house-keepers,” (with certain qualifications, and free from certain disqualifications,) “ to appear at such succeeding court, on the first day ; and the said twenty-four, or any sixteen thereof, appearing, shall be a grand jury,” &c. (a). And if a sufficient number of said house-keepers, shall not attend on the first day, the sheriff is to supply the deficiency from the by-standing house-keepers, &c. And by the same statute (b), u if any sheriff shall fail to summon a grand jury, and return a panel of their names, as therein directed,” he is subjected to a penalty of thirty pounds.
The form of the panel, and the manner of returning it, not being specially prescribed by the statute, must be regulated by the sound discretion of the court, guided by reason, by usage, by convenience, and with a view to the end proposed by the legislature. Not only justice to the individual jurors, but sound policy, as it relates to the purposes for which the jury is summoned, requires that they should be notified before the sitting of the' court, to attend : justice to the individual, that he might make the necessary arrangements for his absence from home — sound policy, because the person who has had timely notice that his services would be required, and had made arragements with that view, would Re much more likely to execute the duties required of him, with patience, diligence, deliberation, and usefulness, than an individual summoned on the spot, and confined without previous notice and preparation.
The sheriff, too, by being compelled to summon the jury before the court, would have a better opportunity, and be much more likely to make a judicious selection, *235 than if permitted to summon them on the spur of the occasion, from amongst the by-standefs ; and it is presumed, that from motives of this kind, the legislature were induced to annejc the penalty for a failure on the part of the sheriff. These considerations shew, that the court necessarily possess such a controling power and superintendance, over the sheriff, as to make it their duty to see that he has complied with his. They, therefore, have the right tp compel him, and it is his duty to return a panel of the jurors, at as early a period of the term as the court shall prescribe, for the purpose of shewing that he has complied with the law, and has not incurred the penalty ; as also, that it may legally appear who have been summoned ; who attend ; and to justify the award of process against the delinquents, if any; and to supply their places from amongst the by-standers ; so as to compose a competent inquest.
To whom the panel should be returned, whether to the court orto the clerk, has been made a question by the counsel for the defendant. This case may well be assimilated to the case of a venire, facias, which especially requires the summoning of a jury, and the return of their names ; the command of the writ is, that it be returned to the court; and yet the universal practice is, to deposit it with the clerk, who is the keeper of all the papers, writs, returns,files and records of the court. If, then, that writ is properly returned by delivering it to the clerk, as the practice, not only with respect to that class of process, but of all others, has well sanctioned ; surely the return of the panel of the grand jury, which panel is required by law, (the law itself, standing for the command contained in those other precepts) is equally as correct and proper, when made to the clerk in this case, in term time, as in case of other process.
But for what should the court pass through the idle ceremomy of receiving the panel from, the sheriff, and sending it by him to their clerk for safe-keeping. The general practice, with respect to returns of the panel of grand jurors, has been, to deliver it in to the clerk ; and in this case, it has been proven, that such had been the usual mode in the circuit court of Ohio.
As the sheriff had, therefore, properly returned the panel to the clerk, it was the clerk’s duty to keep it safely, and ready to render, free from erasure or mutilation, *236 when wanted for any of the purposes intended hy law. The erasure by himself, was a positive violation of the confidence reposed in him as an officer, and a breach of his duty.
Some circumstances have been1 urged, as an extenuation or palliation of the offence, viz : that his apprehension of persecution or prosecution, was founded in fact; that he conceived Field prejudiced ; that he only wanted grand jurors who were neither his foes nor his friends ; that it was not criminal to seek a fair trial; that intending only what was right, he cannot be cqnsidered as criminal.
Evidence was produced, to prove that the defendant’s apprehensions of a prosecution, were well founded ; but no evidence whatever, has been adduced, to show that the suspicion of the juror’s prejudice, had any place but in his own imagination, or that any circumstances existed which could reasonably have excited such suspicion of prej udice.
To answer his own notions of impartial justice, as it respected himself, he has made use of his official situation to divert the usual streams of justice. He has not chosen to submit his objections to the juror, to the decision of the constituted authorities ; but has undertaken tobe the judge, adjusting the balance and weights in his own behalf. The personal advantage which he proposed, and the means employed, do not seem calculated to extenuate the offence, but shew design, volition and deliberation. But had the juror been loaded with prejudice, and an objection by the defendant permissible in law ; the means employed by the defendant to put him by, were illicit, and a violation of positive duty. He was not the person to judge of the qualifications or disqualifications of jurors ; his office was ministerial, not judicial. If his objections to the j uror had been founded in reason, or in fact, why not submit them to the proper tribunal ? That is the remedy which another individual (or himself, but for the confidence reposed in his official station) must have pursued. To have possessed himself of the panel privately, after it was returned to the clerk, and to have made the erasure, would have been a misdemeanor in a private person. The breach of official confidence and duty, cannot palliate ; and, however some politicians may cherish the maxim, “That the end sanctifies *237 -the means,” it is not recognized by any system of municipal or moral law. A violation of positive duty to the whole community, can never be sanctioned by a prospect of individual benefit. Such a principle would endanger the most valuable rights ; sap the foundation of society; and overturn the first principles of moral justice. The preservation of the records, files and returns, in the various departments of government, is of such importance, and the violation of duty in that respect, by an officer himself, is of such dangerous example, that nothing can justify it ; and the motives in this case, cannot be considered by this court, as palliating the of-fence.
The next charge which claims the attention of this court, and which is fully supported by the evidence, is, “For permitting, in his presence, and with the approbation and consent of the said Barry, a replevin bond, taken upon an execution which had issued from his office, against the executors or administrators of Charles Travis, and returned by the sheriff, to be altered, by erasing the name of John Handley, and inserting the name of-Perkins, after the said repelvin bond was returned and filed in the office of which the paid Barry is clerk, contrary to his duty, and contrary to law ;” and “ For issuing an execution according to the ¡said replevin bond, so as aforesaid altered and changed.”
This is an pffence of a very deep cast, and in itself, contrary to the plainest principles of right, and to the impressions of the most common understanding. That a bond, when executed, ought not to be interlined, erased, or altered,is one of those universal principles of law,which is recognized and sanctioned by the common sense of all mankind. The erasure or alteration of a private obligation, by a private individual, is regarded by the law, as highly criminal; and surely the erasure and alteration of a bond, officially taken, made by the officer of the law, in whose custody it is lodged for safe-keeping, must be regarded in a much more criminal light; because the consequences to society, are much more dangerous. The defendant having permitted the erasure and alteration pf the bond to be made in his presence, and with his consent, cannot be regarded in a more favorable light, than }f he had done the act himself ; more especially, as he *238 consummated the offence,by issuing an execution on the replevin bond, after it was so altered.
The defendant is left without the palliation or excuse, that the act was done through ignorance or inadvertence. For it is fully proven that before the alteration was made, upon an application made by him to Mr. Dá-vidge, the commonwealth’s attorney for that court, Mr. Dayidge correctly advised him that the bond was erroneously taken, and did not authorise execution to be issued thereon ; that the proper corrective was an application to the court to quash the bond ; and that the bond Ought not to be altered, His permitting the bond, after this sound and wholesome advice, to be erased and altered, must be considered as a wilful and deliberate violation of official duty.
The defendant’s counsel have- insisted that as the-judgment and execution were for the use of Handley, although obtained in the name of Perkins, which probably occasioned the mistake in taking the replevy bond, fhe alteration tended to the attainment of justice ; and that therefore, the defendant, having that in view, cannot be criminal.
This argument is founded on the monstrous maxim, “ That the end will justify the means,” before noticed by the court. Can it possibly be right that the clerk shall make himself the judge between the parties ?' That by an erasure and alteration of the papers or records of his office, he can be permitted to change' or alter the situation or rights of the parties, in the absence, and without the knowledge or consent of one of them ? The dangers to the community resulting frotó-such practices, give a sufficient answer.
His counsel have also insisted that a single act of malfeasance in office, ought not to remove a clerk, unless it be such as evidences want of integrity. To which it may be observed, that the defendant has been guilty of more than one offence of this nature : that he has in oñé instance erased an official paper, and in another, permitted one to be erased ; which, to say the least, shews such disregard of the duties of his office, as renders him .unfit to have the custody of public records.
This court can only regret that the general good cha-, racter proven by the defendant in this trial, has not been sustained throughout, but has,been interrupted by the- *239 instances of official misconduct before animadverted upon.
April 14th.
It is not the province of this court to dispense mercy, but to pronounce the judgment of the law ; which in this case they must do, however much they may regret that the defendant has been led astray by misguided influence, or his own passions or prejudices.
Wherefore, it is considered and adjudged,that the said Daniel Barry, clerk of the Ohio circuit court, is guilty of a breach of good behaviour in office, in having erased the name of Benjamin Field from the panel of the grand jury, and in having permitted the replevy bond to be erased and altered, as is set forth in the sixth and ninth charges exhibited against him. And it is further considered, ordered and adjudged, that the said Daniel Barry, clerk of the Ohio circuit court aforesaid, Ipr the breach of good behaviour in office aforesaid, shall be, andi he is hereby removed from his said office of clerk of the Ohio circuit court aforesaid, the members of this court concurring unanimously in this sentence.
The defendant, by his counsel, applied for a new trial of the cause, on the following petition :
“ The defendant petitions for a new trial and hearing of the prosecution against him, both in point of law and fact; because, with due submission, he sheweth that he. is advised and believes that the case hath been misconceived in both points. The accused disavows the doctrine of The means being justified by the end but holds.that in neutral acts, the end may be used in evidence, to shew the intention innocent.
“ The accused accords in the opinion that the court are to pronounce law, ‘ not to dispense mercybut from this he doth not admit an inference, that law is void of mercy ; and particularly where it vests the court with discretionary power, (not tied down by positive rule,) and more particularly in cases like the present, where the court are to try the facts, as well as to determine the. law ; thereby performing both the office of jury and judge ; and that the court, in such cases, should exercise such discretion as would be correct in a jury, if the trial was by a jury. (See cases in this court adjudged, to wit : M'Clelland vs. Hobbs (a), and Tennell vs. Dozier (b)..
■“ The accused is advised and believes, that both law *240 and practice bn the subject of grand juries, is, for the? sheriff to keep the list of names of the persons summoned, until he is directed by the court to call the grand jury ; which being done, and the deficiency, if any, supplied from the by-standers, and their names put on a list or panel, with the names of the other attending jurors ; it is then handed to the courts who note the foreman, and hand the panel to the sheriff, who calls the foreman to the book, where he is sworn ; the other jurors aré then, by four, called to the book and sworn. The panel is then handed by the sheriff to the clerk, who therefrom inserts the names of the jurors on the minutes, and the panel is thence disregarded, and thrown aside as a loose paper.
“The court suggesting that the practice is otherwise, takes the accused by surprize, because he can amply prove the practice to be as herein set forth.
“ On the point of the erasure of the juror’s nanie, the act was neutral, and could only be considered culpable, if the circumstances shewn had been against him ; but so far from that, they were in his favor ; for it was amply proved, that he had just ground to suspect that art unfounded prosecution, (which he called a persecution) would be attempted against him, with intent to injure him, (which attempt was accordingly made, but without success). That his desire was an unprejudiced jury. That Mr. Field, the juror, at Mosley’s, had used expressions against Barry ; but said he had so done, Under á belief that they Were right. Barry deemed them unjust, and apprehended prejudice in Field against him ; and, however the defendant’s counsel are willing to admit thát Mr. Field intended no wrong, yet they are unwilling to admit that there was no just cause of suspicion of prejudice.”
“ The counsel for the accused, further suggest, that the erasure was made at a stage when, from the practice, the paper was in the custody and keeping of the sheriff, (not the clerk) ; that it was then a matter between the sheriff and Mr. Barry; and, at most, but a contempt, in retarding the sheriff in the performance of his duty to the court. From the evidence, it also appeared, that a concealment of the erasure was not attempted j but on the contrary, an open statement of the circumstances of the case were readily given ; neither hath there been shewn any thing evidencing criminality.
April 14th.
“ On the point of suffering the replevy bond to he altered^ See. the parties therein Have not complained ; an innocent intention is expressly proven. Mr. Davidge, verbally, in open court, corrected his deposition in this, that he was uncertain whether the conversation relative to amending the replevin bond, was had before or after the amendment complained of. This did not then seem to be material by the Court; the court seem to have forgotten the correction aforesaid, and deem the point material. In this, if opportunity is afforded him, he has ho doubt he can, from circumstances, prove that that conversation was after the said amendment ; since which, he hath not suffered such amendments to be made ; and that he was young in office when the error complained of took place.
“ The accused is advised that the law contemplates misfeasances in office, as well as malfeasance: thatfor the former, fine, 8sc. is the contemplated penalty; not a removal from office. The offences, as shewn, are, at most, but misfeasances ; and thereupon judgment of removal is beyond the contemplation of law.
“ Mr. Davidge, governor Greenup, the reverend Mr. Baffin, and in short, the witnesses on the part of the prosecution, all agree in his generally good character and conduct; and also disposition to promote correct conduct in his office. That the chief objection is too much strictness, is shewn from the evidence of Mr. Badin, and also Mr. Davidge ; also is proven, his anxiety to procure correct information, &c. These, however, are not offered as sets-off; but surely they are strong evidences that the offences complained of have been inad-vertences, and not of such a cast to cause a removal from office.
« Allen, } Counsel far- Defendant:'
The facts stated in the above petition were sworn to by the defendant.
The motion for a new trial Was argued, and the following written opinion delivered by
Edwards, Ch. J. — The importance of this cause, as it relates to the person implicated ; the general good character which he has been proved by the most respectable witnesses to have supported, both as an individual and a public officer ; the zeal manifested by his *242 counsel; their unequivocal declarations, “that they considered the former opinion of this court radically defective and erroneous with their deservedly high reputation for candor and intelligence ; and the surprize and astonishment which it is said by one of them, other intelligent persons have expressed on the occasion; have all combined, to command of this court a patient and scrutinizing review of the opinion heretofore given. Such a review they have given it; in which it would really have afforded them the most unfeigned satisfaction, could they have discovered any just cause to change their former opinion, and to have relieved the defendant from the injurious consequences of it. And though they have too many evidences of the fallibility of all human tribunals, and particularly that which they themselves compose, to doubt that it is possible they may still err in a case which is res integra, without any lights from former adjudications ; or any precedents to guide them ; or even to assist them in their deliberations ; yet they are incapable of discovering any radical defect or error, either of law or fact, in their former opinion. And however much they do regret the consequences of that opinion, to the individual who is the, subject of it; or the dissatisfaction of others, in consequence of it; these are only secondary and minor considerations with this court. Their primary object being to discharge their duty to themselves and their country, according to the dictates of their own judgment, uninfluenced by any consequences that may result therefrom.
In the petition for a new trial, this position is taken, viz : “ That in neutral acts, the end may be used to shew the intention innocent.” If, by neutral acts, are meant those which in themselves, are neither good or bad, then such evidence can never be necessary ; since such acts alone could never furnish any ground for accusation. An act malum in se, or malum prohibitum, cannot come under such a definition ; and if it is not meant by the position that the end can justify an act either malum in se or malum prohibitum, it can have no hearing upon the opinion heretofore given ; as that is predicated upon the acts complained of, being either the one or the other.
Another position is, “ That the law is not void of mercy.” Whatever mercy the law itself has, is with the law; makes a part of it; and is administered by admin *243 istering the law ; and every portion of mercy, not warranted by law, and adminstered contrary thereto, is a violation of law, and consequently, cannot be legally administered by a court of law. Such a dispensing power, if it exists at all, must be exclusively the province of another department of the government.
A third position is, “That this court having the right to try the facts, as well as to determine the law, and thereby performing both the office of jury and judge, have a right to exercise such discretion as would be correct in a jury, if the trial were by jury1.” This position is unquestionably correct. But discretion is the just discernment of what is right, through the law. And were the trial by jury, no other kind of discretion could be “ correctly” exercised by them. The exercise of an arbitrary discretion by a jury, would be fully as incorrect as if exercised by the court. Either have a right,' and it is their duty to exercise a legal discretion in all cases that require it ; but neither can “ correctly” exercise any other ; for the law would never permit any discretion which would necessarily defeat its own purposes.
Nothing has yet been alleged which has satisfied this court that the acts complained of were “ neutral,” or that they possess any power of dispensing mercy, or of exercising any discretion which can operate to the defendant’s benefit : so that the foregoing positions, though ever so self-evident, do not affect the former opinion of' the court ; which is founded on the belief, that the facts complained of, were in themselves high misdemeanors in office, which, iftolerated, would be of the most dangerous example, and pernicious consequences to society.
An exception has been taken to that part of the opinion which relates to the general practice of returning and disposing of the panel of grand jurors. So far as relates to what the general practice has been, it is possible the court have been mistaken. The practice may have been variant in different parts of the state ; but the court have no doubt that the practice should be as they have stated it ; and if they have been mistaken as to what it actually has been, the mistake cannot benefit the defendant ; for in his case it was proved that the panel was returned conformably to the practice of the Ohio circuit court; which practice we have stated to be correct. And being thus returned to the defendant, it was *244 fj¡s duty to have kept it free from alteration or erasure, till it was legally disposed of,
It seems to be contended in the petition, that the panel is not an official paper, because it may be thrown away after it has been handed from the court to the clerk, and by the clerk recorded ; and much argument has been used to shew that the paper need not be filed and preserved; yet the very statement shews that it 15 a paper required by the forms of law, and necessary to the convenient and correct administration of public justice ; demandable of the sheriff; necessary to the court and the clerk. And if this were the only use and object of it, it does not prove that the clerk would not be as guilty of misbehaviour in altering or erasing it after it legally came to his hands, and before it was finally disposed of, as if, after all these objects were answered, it was still required to be preserved among the files of the court. There is nothing in the former opinion of the court, which either suggests or implies that the panel should be filed and preserved, That part of the opinion was only intended to shew that the return of the panel should be made to the clerk, or could properly be made to him ; and if made to him, that he would violate his official duty by erasing it; nor, indeed, was any necessity seen by the court, for retaining the panel after the end and objects of it were answered. Still that did not prove, nor does it yet prove, that a return ought not to be made, when the act of assembly (a), expressly re-, cIu'r(;s it of the sheriff, under the penalty of SOL- — and that this return, required of the sheriff by the law, as a general precept, could not, like all others, be returned to the clerk. Nor has any thing yet been alleged, to shew why, if general precepts, all writs, &c. which import on their face to be returnable to the court, are properly returned by delivery to the clerk, the panel of a grand jury should not be returned in the same manner.
If die court were right in supposing the panel of the grand jury was a paper containing their names ; and not the bodies of the jury themselves ; and necessary to be returned for the purpose, among other things, of ascertaining delinquent jurors, and founding proceedings against them thereon ; then the statement in the petition itself would unquestionably argue the propriety of the return to the clerk, and not to the court; for it might be *245 possible that a jury might not appear ; that a jury would not be had ; and as the only object of handing the panel to the court, is alleged to be for the purpose of appointing a foreman ; this could never be necessary, nor would it be proper, till the jury did appear. And when they do appear, it is not always necessary that the court should even see the panel; as they see the jurors, and can decide without it, very frequently, who they will make foreman.
Co. Lit. 158 b — 3 Bl. Com. 353-
Co. Lit. 156.
But it has been emphatically contended, that no panel can exist till the jury have appeared and have been sworn ; that then, and then only, the paper containing the names becomes a panel, according to the legal acceptation of the term ; and is then only returnable to the clerk. ■ These are certainly ideas which no single authority can be produced to establish ; ánd as a com-Slete refutation of them, it is only necessary to shew ow the term panel is used and understood by Coke and Blackstone. By them a panel is a little piece of parchment on which the jurors’ names are written, and is always annexed to the writ, where a writ issues ; and in some cases the panel is returned before the jury are summoned.
If the array of a panel is returned by a bailiff of a franchise, and the sheriff returned it as of himself, this shall be quashed.
If two strangers make a panel, and not in a favorable manner for the one party or the other, and the sheriff returns the same, the array-may be quashed,
A challenge to the array, is a challenge to the persons empanelled.
If a panel upon a venire facias be returned, and a tales, and the array of the principal is challenged, the triors who try and quash the array, shall not try the array of the tales.
Upon an indictment, &c. the sheriff is bound to return to every session of the peace, and every commission of oyer and terminer, and of general goal delivery, twenty-four good and lawful men, &c. and as many as appear upon this panel, are sworn upon the grand jury.
If the proceedings are before the court of king’s bench, there is time allowed between the arraignment and trial, for a jury to be empanelled by writ of ventre facias to the Sheriff. But before commissioners of oyer and ter- *246 miner and goal delivery;, the sheriff, by virtue of a general precept directed to him beforehand, returns to the court a panel of forty-eight jurors, to try all felons that may be called on their trial at that session. Such is the language of some of our best authorities ; no further comment is thought -necessary.
As to the second charge, it has been contended that die defendant had nothing to gain by the alteration of the bond ; that it would have been more to his interest, that the bond should not have been altered, but that it should have been quashed by the court; as he would in that event have gotten more fees by it; that there was no criminal intention..
These statements may be correct; but whether they are so, or not, is not material with the court. The act of permitting the alteration, was a deliberate one ; it was a voluntary one ; and it was unlawful; nothing, therefore, can justify it. To alter a bond, by changing the name of the obligee, without the consent of the obli-gor., is such a flagrant violation of right, that its impropriety strikes all mankind at the first view, But this bond had not only all the usual solemnities of a bond, but it had acquired all the dignity of a judgment. To alter a bond in any material part, would he a forgery ; and to that it would be a poor excuse, to allege that it was done with good intentions, to wit. to facilitate the recovery of a just debt. A* well might a man make an entire new bond, for the same purpose. If A. owed ⅞. g 100 upon simple contract, which B„ could not easily recover without a bond, why might he not, upon the same principles, be excused for forging a bond on A. for the purpose of facilitating the recovery ⅜ there would be as much justice and reason in it, and a.s little moral wrong. But there is. so much credit attached to records, that it is of the utmost importance, that any alteration, by any other means than according to, the rules of law,, should be severely prohibited.
It is said, that this court ought not to remove a cler,k~ from office, for bare error in judgment. This is correct to a certain extent ; and yet it does not bear upon thi„s case. First — Because this is a case in wh,ich. the clerk had no right to j udge ; nor is there any thing in the law concerning the duties of clerks, or any known .custom or general practice among them, which seems calculate,d *247 tro have misled the defendhntinto suvh awassttmption’of judicial functions. As wett might he have attempted to give judgment itself. And, secondly — “If he really was in error with regard to his authority, it shews such gross ignorance as to render his tenure of the office dangerous to the community. Were such practices permitted, what security could individuals, or society at large, have for the safety of their property ; their rights to which, depend upon the records ; which,,in themselves, import such absolute verity, that they cannot be contradicted ? With what ease might the covenant in a deed, a judgment, or a will, he most essentially changed ; and all this might be done, and excused upon the whimsical or capricious judgment of the clerk ; by whieh he might be m isled into the belief, that he was furthering justice. If the grounds of the defence in this case are supportable ; and if the clerk’s allegation, that he conceived the alteration was for the furtherance of justice'; alleging, that if he did wrong, it.was only an error of the head, not of the heart; would be sufficient to warrant this court, in permitting him to retain his office ; what clerk could not come forward, covered with such ■ a shield of defence, even against an accusation of the most flagrant and outrageous injustice? But as- to- the motive in this individual case, is it not fairly inferable, that the defendant conceived the alteration might materially change the situation of the parties, by preventing the executor of Travis, from having the benefit of a writ of error with a supersedeas ; or such other delay, or redress as the law allowed him. And was not his object to allow that to be done, which he knew a court alone was competent to do ? Or if not, why let the bond be altered ?’ If the alteration had not been thought material, why did the others make it, or be permit ? And why did he consummate the act, by issuing an. execution, after he had been warned by Mr. Davidge, that no execution could issue.
As to the testimony of Mr. Bavklge, the court well recollected it when they gave their former opinions,; and are fully satisfied, the inference drawn from it was correct.
It is also urged’, that if such charges as those: exhibited against the defendant, under the whole circumstances of the case, are to remove ⅛⅛, there i* scarcely a *248 clerk in the state who can escape. Without pretending’ to determine on the correctness of the remark itself, the court can only say, if such practices, or as dangerous ones, have become so universal, it furnishes a stronger reason for interposing the only corrective powers they are vested with, to prevent the entire prostration of the rights of their fellow-citizens ; and though, at all times, the duty will be a painful one, yet it is one from which they will never shrink, whenever a proper case is brought before them.
1 Vol» L.U. S»io6.
It has also been contended, that admitting the defendant has been guilty of improprieties, yet the court have considered the offence of greater magnitude than it really amounts to ; and have pronounced a severer sentence than ought to be expected. But the estimation in which the offence has been held in England, in Virginia, and by the legislature of the Union, as appears by their statutes, is thought strong corroboration of the correctness of the judgment of removal.
It is stated by Blackstone, that no man’s property would be safe, if records might be suppressed or falsified, or person’s name be falsely usurped in court; and such offences are made felony by statutory provision in England (a).
By the laws of Virginia, 1794, c. 70, if apy clerk shall willingly make any false entry, or rase, alter or change any record in his keeping, belonging to his office, he shall be amerced and imprisoned at the discretion of a jury, &c.
By the law of the United States, if any person shall alter any record, writ, process, or other proceedings in any courts of the United States, by means whereof, any judgment shall be reversed, he shall, on conviction, be fined, not exceeding five thousand dollars ; or be imprisoned, not exceeding seven years ; and whipped, not exceeding twenty-nine stripes. And there certainly cannot be much difference between the offence of making an erasure, by which a man who has a judgment will loose the benefit of it, and making an erasure, by which one who is entitled to a judgment in his favor, or a reversal of a judgment against him, is deprived of that right. These statutes are refered to, only to shew the general impression of the great importance of guarding records from any illicit alterations.
*249 Sut it is argued in the petition that the parties to the Replevin bond have not complained; It coukl not be ex-Reeled that the party benefited by the alteration of the bond, would complain. The other party is dead, and his executor has shewed no disposition to acquiesce in the proceeding ; for it does appear, that through him a prosecution was commenced against John Handley and Harrison Taylor, for forgery ; that the grand jury presented them for it; and that at a subsequent court, when an indictment was preferred in due form, before another grand jury, thát it was returned not a true bill, in consequence of the defendant’s testimony, alleging the act was not done with a fraudulent intention. But surely it is not necessary that the individual injured, should complain. This, throughout the whole defence, has been assimilated to a criminal prosecution. In criminal prosecutions; the whole community are equally concerned ; and it is not the means of administering individual redress. It is, therefore; immateriál to this court, who complain. Their inquiries are directed to the facts only, and the law arising upon those facts. And with this view of the subject, the court, having deliberately examined and weighed both the affidavit and petition, are of opinion; that their former judgment of removal stands unaltered and affirmed ; not as the redress of afly particular individual, but that of the community. And it is further ordered that the attorney-general; or any of the parties concerned, may take out a copy of the judgment in this case, whensoever they may choose to do so ; the 1 members of the court concurring unanimously in this opinion;

 Abfent, Judge Edwards,

 If the appointment of the clerk were void from the beginning, it would feern to follow that all procela ¡lined by him, which the law required to be attefted-by che (jerk, mult be void. Á doctrine fo mifchievous, deferves further' consideration.

 Afls of i8®5, ch, %, § j6,p. ⅞⅞,.

 The perfora at whofe mftance the profecution was commenced, was hoi mentioned in any part of the record 5 and the queftions above ftated* were not? decided by the court.

») A£ls of 1796-7,p.i3°, ⅝ 23, 1 Brad 196.

¿) A&s of 1796-7, p.134, § 59, 1 Brad. 202.

«} -tinte »•

¿) Ante 47.

f 1796-7^134, ⅝ 59, i Brad, ⅝°⅝.

<*) 4 Black* Com» iz3»