Commonwealth v. Chinn.

CASE 60—PROCEEDING BY THE COMMONWEALTH AGAINST CLAUDE CHINN TO REMOVE HIM FROM HIS OFFICE AS CLERK OF THE FAYETTE COUNTY COURT.

## Commonwealth v. Chinn.

JUDGMENT · ACQUITTING THE DEFENDANT OF THE CHARGES PREFERRED AGAINST HIM AND REFUSING TO REMOVE HIM FROM HIS OFFICE.

REMOVAL FROM OFFICE—FILING OF INFORMATION BY ATTORNEY GENERAL—SUPPLEMENTAL INFORMATION—FARMING OFFICE—FALSE REPORT AS TO PAYMENT TO STATE AUDITOR—ABSENCE OF CORRUPT MOTIVE.

Held:  1. To authorize the Attorney General to file information in the Court of Appeals for the removal of a clerk of court, he need not first obtain leave of court; the institution of the proceeding being in his discretion.

2. After the court has acquired jurisdiction by the filing of the information, it may regulate the filing of amendments, under Civil Code Practice, section 134.

3. A supplemental information charging the commission of an offense after the institution of the proceeding will not be allowed, an agreement having previously been made for the taking of the proof by deposition instead of orally, as contemplated by the Code of Practice, and the charge made in the supplemental information not being covered by that agreement.

4. Defendant, a County Court Clerk, having fallen behind in his payments to the State Auditor by reason of the failure of persons employed in his office to make proper entries in his cash book of money received, made an arrangement with the surety in his bond, a security company, by which the company advanced the money to pay this shortage, upon condition that defendant would employ more systematic methods, and to that end it was agreed that defendant would appoint a deputy to have exclusive con-

trol of all money paid into the office, to be by him deposited in bank to defendant's credit as clerk, and checked out by the deputy in payment of current expenses and the dues of defendant to the State, the surplus of the fees, which belonged exclusively to defendant, to be used in reimbursing the security company. *Held*, that as defendant did not agree to surrender the control of his office, and the agreed changes in the management of the office were legitimate and proper, the arrangement made does not authorize defendant's removal from office.

5. The fact that defendant stated in his regular tri-yearly report to the Circuit Court, which was sworn to by him, that he had paid to the State Auditor the amount due by him to the State when in fact he had not done so, does not authorize his removal from office, as he held the money awaiting the final determination of a contest then pending as to who was the rightful Auditor, and did upon the determination of that contest pay over the money; the report being made upon the advice of friends, and without any corrupt motive.

JUDGES PAYNTER, GUFFY and WHITE, DISSENTING.

ROBT. J. BRECKINRIDGE, ATTORNEY GENERAL, AND MAURY KEMPER FOR COMMONWEALTH.

The ground of the general demurrer to the first count in the information, is, that no forfeiture of an office prescribed by a statute can take effect until there has been a conviction before a jury upon an indictment; and if such is the law applicable to such cases, then there is no necessity of proceeding by way of information before the Court of Appeals, because if the party is indicted and convicted of an offense that works a forfeiture of the office, then that forfeiture takes effect as soon as the judgment of conviction is rendered. If the remedy by indictment is not merely cumulative, then the only means of removing a clerk of a county court from his office, is from information prosecuted by the Attorney General to this court.

As to the second count in the information: It is distinctly alleged that the money alleged to have been collected by the clerk had never been remitted to the Auditor, but was retained by him in his own custody; that the report was false at the time he made oath to it and was so known to him when the oath was administered, and that by reason of the report he obtained credit of said firm falsely as having been paid and remitted to the Auditor.

By section 449, Criminal Code, where a clerk has been convicted by a judgment of a court of competent jurisdiction, of

Commonwealth v. Chinn.

an offense which causes, by reason of the statute, a forfeiture of his office, a transcript of the record may be filed by the Attorney General as evidence of the information upon which his removal is based, and thereupon, the case proceeds without even a prosecutor. It follows, therefore, if there has been no conviction, and a cause of forfeiture exists, by reason of the statute, the court may hear evidence and remove him from office, if any cause for reversal is made out by the facts proven, and in such case this court must pass both on the law and facts.

BRECKINRIDGE & SHELBY AND MATT WALTON, ATTORNEYS FOR DEFENDANT.

(No briefs in the record.)

OPINION OF THE COURT BY JUDGE BURNAM—ACQUITTING THE DEFENDANT.

This is a proceeding to remove the defendant, Claude Chinn, from the office of clerk of the Fayette County Court. The application is made to this court under section 124 of the Constitution, and in conformity with the provisions of sections 442-450, inclusive, of the Criminal Code. Section 442 of the Criminal Code provides: "That clerks of the court of appeals, and clerks of circuit, county, and police and city courts, may be removed from office by the court of appeals, upon a written information signed and presented in said court by the attorney general, charging the following causes of removal: (1) Any act, omission, or neglect by such clerk, for which the statutes have prescribed a forfeiture of office. (2) Any malfeasance in office or neglect of official duty that the court may consider sufficient cause of removal."

By the constitutional provision above referred to, this court is made, in this peculiar class of cases, the judges of the facts as well as the law, and two-thirds of the members must concur in the sentence.

The attorney general filed a written statement of the
charges upon which he relies for the removal of the de-
fendant from office, on the 16th of October, 1900. They
are, viz.: "(1) That the defendant during his present term
of office did, for a valuable consideration, farm out, sell,
and transfer to the Fidelity & Deposit Company of the
State of Maryland his office as clerk of the Fayette County
Court, with all of its emoluments, profits, etc., and has
surrendered to said company and its authorized agents
the custody, possession, and control of said office, including
its records, books, and papers, and the said company is
now conducting said office as if it were the clerk of the
Fayette County Court. (2) It is charged that the said
Chinn, on the 4th day of June, 1900, made his report of
taxes and moneys collected in conformity with the stat-
ute, that said report was produced in the Fayette Circuit
Court by the defendant, Chinn, and approved by the circuit
judge, Watts Parker, and its correctness and truth sworn
to by the said Chinn before the clerk of the Fayette Cir-
cuit Court; that in said report it is stated by said Chinn
that he had collected $8,539.75, and had remitted to the
auditor of public accounts $5,368.81, when in truth and in
fact he had made no remittance, but retained the money in
his own pocket; that said report was false, and so known
to the defendant, Chinn, when he made oath thereto, and
by reason of said report he obtained a credit of said sums
so falsely and wrongfully entered by the defendant as hav-
ing been paid and remitted to the auditor." On the 30th
of October, a general demurrer to each paragraph of the
information was overruled. Thereupon the defendant en-
tered a plea of not guilty to each paragraph of the infor-
mation, and by consent, both of the attorney general and
of the defendant, entered of record, it was ordered that all

Commonwealth v. Chinn.

testimony which was to be read upon the trial of the in-
formation was to be by depositions, and the case set for
trial on the 11th day of March, 1901. On the 31st day
of January, 1901, the attorney general filed supplemental
information, charging that, since the institution of this
proceeding, various additional grounds for the removal
of the defendant from office had arisen, and specially
charged that in the tri-yearly report made by him to the
Fayette Circuit Court, on the 1st day of December, 1900,
he failed to account for $153.16 of taxes collected by him.
When the case was called for trial, the defendant moved
to strike this supplemental information from the file on
the ground that it had been filed without leave of court,
and was not covered by the agreement that the testi-
mony to be read on the trial of the case should be by dep-
osition.

Before proceeding to an examination of the charges
in the information, it will be necessary to dispose of sev-
eral preliminary questions suggested by the attorney for
the defendant. First, it is contended that under the rule
laid down in the case of Com. v. Barry, 3 Ky., 237, the
attorney general had no authority in law to institute this
prosecution without first having obtained leave of court
to do so, upon probable cause shown. The constitutional
provision in force at the date of the proceeding against
Barry in 1808 was substantially the same as that em-
bodied in our present Constitution; but there was at that
time no statute regulating the mode of procedure, and in
that case the court decided that the proceeding must be
instituted by the leave of court, and that probable cause
must be shown to obtain that leave. And this method
seems to have been followed in the later case of Com.
v. Arnold, 13 Ky., 309, and Com. v. Rodes, 31 Ky., 595.

But, subsequently to the determination of these cases, the Legislature has prescribed the mode of proceeding in this kind of cases, which in most respects is in accord with the rules adopted by this court in the case of Com. v. Barry, but there is nothing requiring the attorney general to first obtain leave of the court to file information. On the contrary, the institution of the proceeding is left to his discretion. But having once filed the information, and the court having thereby acquired jurisdiction of the pro· ceeding, they are entitled to regulate the questions of amendment, under section 134 of the Civil Code of Prac- tice. And as the offense charged in the supplemental in- formation is alleged to have occurred after the institution of the proceeding, and is not covered by the agreement that the testimony in the case should be by deposition instead of by parol, as contemplated by the Code, a ma- jority of the judges are of the opinion that this amend- ment should not be allowed, and that the offense therein charged has not been considered upon this hearing, and the amended information is stricken from the file.

We will consider the charges made in the original infor- mation, and the proof offered in support thereof. First, that the defendant has sold, or let to farm, his office to the Fidelity & Deposit Company of the State of Maryland, in violation of section 3740 of the Kentucky Statutes. The testimony on this point conduces to show that during the month of July, 1900, the defendant ascertained, from the reports made to him by expert accountants employed by him to check up his accounts, that he had fallen behind to a considerable extent in his payments to the auditor of certain items of revenues due the State, which had been collected by persons employed in his office, and which they had neglected to enter upon the cash book for that

purpose, and that upon the ascertainment of this fact he immediately notified the Fidelity Company, who were his securities upon his official bond, and asked their assistance in raising the money necessary to pay off this indebtedness. After full investigation, the security company agreed to advance the money necessary for this purpose upon the condition that the defendant would employ more thorough and systematic methods in looking after the financial side of his office, and to this end it was agreed that the defendant would employ a deputy, who should have the exclusive charge of moneys paid into the office, to be by him deposited in the bank to the defendant's credit as clerk of the Fayette County Court, and who should have the exclusive right to check on this account in payment of the current expenses of the office and the dues of the defendant to the State; this deputy being required to give bond for the faithful discharge of his duties. Defendant also agreed that any surplus arising from the fees of the office, which belonged exclusively to him, should be used to repay to the company the money so advanced by them; but there is no evidence that the defendant made any agreement to sell, farm, let, or surrender the control of his office to the company. On the contrary, the testimony shows that from this time on he has given his office more attention than ever before, and that, without let or hindrance from anybody, he has discharged old clerks and deputies, and employed new ones to fill their places, as his interest and the efficiency of the office seem to require. There is no charge or proof that the shortage in defendant's office was due to any willful or intentional wrongful act or neglect on his part, and it seems to us that the changes in the management of the office suggested by the security company and agreed to by defendant were

such as should have obtained in the management of the county clerk's office in a large and populous community, and were in all respects legitimate and proper; and, while the testimony conduces to show some degree of carelessness on the part of the defendant in the administration of his office previous to this time, we do not think that it was sufficient to authorize the infliction upon him of the severe penalties imposed by the statute, even if they were made a ground of complaint, which has not been done in this proceeding. The court is unanimously of the opinion that this charge has not been established by the proof.

There is no controversy as to the facts contained in the second charge of the information. It is admitted by the defendant that he swore to and filed the tri-yearly report, a copy of which is filed with the information, in the Fayette Circuit Court, on the 4th day of June, 1900; and, in explanation of this action on his part, he says that Mr. Sweeney qualified and took possession of the office of Auditor of Public Accounts for the State of Kentucky on the 1st day of January, 1900, and that subsequently thereto Mr. Coulter, who was the rival candidate for the office at the preceding November election, instituted a contest therefor before the election commission, and that, after the determination of the contest by the election commission in favor of Coulter, he instituted a suit for the possession of the office in the Franklin Circuit Court, and that this litigation as to who was the rightful auditor was still pending and undisposed of in the court of appeals of Kentucky on the 4th day of June, 1900; and that Sweeney and Coulter both claimed to be the rightful auditor, and each had given him written notice, warning him not to pay the money in his hands due the State to the other, and threatening him with suit in the Franklin Circuit Court if

he did so; that, under these circumstances, he counseled with his attorney and other friends who advised him not to pay any more money to either of the claimants until the contest was finally settled; that, while this question was still undetermined and pending in the courts, the time for making his tri-yearly report to the Fayette Circuit Court. in the presence of the grand jury came around, and that he went to see the judge of the Fayette Circuit Court, and explained to him that he had not paid to the auditor the money in his hands due the State which he had collected. after the institution of the contest, and told him that the deputy in the office whose duty it was to make out these reports upon the printed blanks furnished by the auditor had made out the report so as to show the net balance in his hands less the amounts paid by monthly remittance to the auditor and to the trustee of the jury fund, but that as a matter of fact he had not actually remitted the money to the auditor, but had retained it in his possession to await the determination of the litigation as to who was the rightful auditor; and that the circuit judge said to him that he did not know what to tell him to do, but that he had better let his report be filed, and that he accordingly did so. He also states that he had given the same information to the clerk of the circuit court at the time he swore to the report. And these statements of the defendant are not contradicted. It also appears that after the final determination of the contest for the office of auditor by this court, and after the defendant had ascertained correctly the amount of his indebtedness to the State, he paid all of such indebtedness, including a large amount by way of penalties. There is no allegation that, at the time this information was filed by the attorney-general, the defendant owed the State a dollar, nor is there any charge

that he was actuated by any corrupt motive in filing the report with the circuit clerk. He certainly could not expect to get any credit for money paid to the auditor by filing this report in the circuit court clerk's office, as such credit could only be given by the auditor on his books. In view of the entire absence of evidence of a corrupt motive on the part of the defendant in making the affidavit referred to, and also of the fact that no substantial injury accrued to the State by reason thereof, a majority of the judges of this court are of the opinion that a removal from office should not be adjudged on either of the charges contained in the information filed by the attorney-general. It is therefore adjudged that the defendant be acquitted of the charges that have been preferred against him as clerk of the county court of Fayette county

Chief Justice Paynter and Judges White and Guffy dissent.

Dissenting opinion by Chief Justice Paynter in which Judge White concurs:

The law required Claude Chinn, clerk of the Fayette County Court, to make a report of public money coming to his hands to the Fayette Circuit Court, over which Judge Watts Parker presides. On June 4, 1900, he made a report showing the amount he had collected from March 1 to June 1, 1900, in which he credited himself with $5,368.81, "amounts paid by monthly remittances to auditor." He admitted in his testimony that he had not remitted any part of that sum to the auditor, that it was due the State at that time, and that he knew that fact when he swore to the report. So he confesses that he swore falsely, and that he knowingly did so, and to an official report which he was required to make as clerk of the county court. No jury which desired to preserve its reputation for fairness

and integrity could find the defendant not guilty, if the
question was submitted to it whether he had been guilty of
false swearing by knowingly and intentionally swearing to
the report in question. To find him not guilty would be
in disregard of his plea of guilty, because he says he swore
to the report, and knew it was false when he did so. His
offense involves as much turpitude as any offense of which
he could be guilty. It not only shows degradation, but an
utter lack of official integrity. He did not com-
mit this grave offense without a motive. When
we consider what his duties were with reference
to the public money in his hands, his motive
for making the false report is easily discovered.
Section 4242, Kentucky Statutes, reads as follows: "Each
circuit and county clerk shall make out an account of all
taxes and other public money received by him up to the
first day of each circuit court, and said report shall show in
detail of whom said moneys were received, for what and
when received, and shall be verified by him and entered of
record; and he shall pay over from the public money re-
maining in his hands to the trustee of the jury fund, until
otherwise provided by law, so much thereof as the court
may, by order, direct, as being necessary for the payment
of the jurors; and the original account, certified, with the
order of the court, shall be transmitted with the balance
of the fund to the auditor. The clerk shall be allowed five
per cent. commission on said sums reported and paid by
him. If any clerk shall fail to perform the duties required
of him in this section, he shall be liable on his official bond,
with twenty per cent. damages thereon, which may be re-
covered by action in the name of the Commonwealth in
any court of competent jurisdiction." A provision of this
section required that the defendant should pay to the trus-
tee of the jury fund such sums as the court directed him

to pay. It is then further provided that "the original account, certified, with the order of the court, shall be transmitted with the balance of the fund to the auditor." At the time the report was made there was a defalcation in the defendant's office. If he had not paid the money due the State, the grand jury then in session, or soon to assemble, might have indicted him therefor. At the time the report was made both Coulter and Sweeney were claiming to be discharging the duties of the office of auditor. The report did not say to which of the parties claiming to be auditor the remittance had been made, and the one ultimately declared by the courts to be auditor might have concluded that the payments had been made to the unsuccessful claimant. In this way the defendant knew the fraud would be overlooked for a time, if not entirely, in the confusion resulting from the dual administration of the office.

From my point of view, it is wholly immaterial whether the device to defraud was skillful or successful, as the turpitude is just the same as it would have been if the scheme had been cunningly devised and successfully practiced. The defendant had collected public money, and was compelled to make a report. If he desired to pursue an evil way, he had a choice between two that were open to him—either report that he had not collected it, or that he had, and disposed of it as the law directs. Knowing the grand jury could at once discover the fraud if he reported he had not collected it, hence he concluded it was safer to report that he had collected it, and paid it as the law directs, and thus take the chance of the successful claimant to the auditorship making the discovery. While he says he had the money at the time the report was made, and knew he owed it to the State, it is certain he did not pay it for weeks af-

ter the court had placed Coulter in charge of the auditor's office, and not then, until he was sued for it. That there was a contest over the office of auditor was no excuse for making and swearing to a false report. Had he made a report showing the money in his hands due the State, and withheld payment until it was determined to whom it should be paid, no one would think it right to remove him from office therefor.

As an excuse for, or in palliation of, the offense of false swearing, the defendant says that he explained the matter to Mr. Rogers, clerk of the circuit court—that the amount reported paid had not been paid—who advised him to take it to the judge of the circuit court. He also says that he went to see the judge about the report, and explained the situation to him. He testifies he said to the judge: "I have made my report, and do not know whether to put it in or not, for I have not really paid this money to the State that I have stated paid in this report;" and then the judge said: "Well, I do not know what to tell you to do about it, but you had better let it go on in." The law required Judge Parker to examine the report made by the defendant, and, if found correct, to approve it. His indorsement shows that he examined and approved it. I can not believe, on the testimony of the defendant, that Judge Parker advised him to make and swear to a false report, or that he approved it when he had been told by him that it was false. However, if it be true that the judge did what the defendant says he did, it neither excuses nor palliates the offense, but shows design, volition, and deliberation. A person should not escape punishment for false swearing because he told some one that he was going to do it, and that one advised him to do so. If the claim of the defendant is true (which I do not believe) that he was ad-

vised by the circuit judge to make a false report and swear to it, the reason is that much greater for punishing the first one arraigned and proven guilty, to the end that other public officials will know they can not be guilty of perjury or false swearing and escape punishment. In Com. v. Barry, Hardin, 242, the court held that a clerk should be removed from office "for erasing from the panel of grand jurors . . . the name of Benjamin Field, after it was returned by the sheriff, without the knowledge or consent of the court, and from private and personal motives." The clerk believed that the grand jury would have before it the question of returning an indictment against him, and, believing the grand juror whose name he erased was prejudiced against him, he erased his name. In Com. v. Rodes, 6 B. Mon., 171, it was held that it was a cause for removal of a clerk because he had made false reports as to the amounts of public money he had received. The sums not reported were small, but the court held that the habitual defalcation exhibited by the facts established authorized and required the presumption that the sums retained, and not accounted for, were retained for sinister and selfish purposes. If the clerk in that case had made a false report as to a small amount, and claimed it was a mistake in doing so, perhaps the court would have excused him.

In my opinion, we have a plain duty to perform. The jurisdiction to try this class of cases was conferred upon this court because it was believed that it would, without fear or favor, dispose of such cases as justice and the public interests required. It was believed to be a surer way of securing the removal of unworthy and offending clerks than it would be to rely upon inferior and local tribunals to do so. Evidently, the framers of our Constitution believed this court would realize it was not its province "to

dispense mercy, but to pronounce the judgment of the law." My opinion is that, from the reasoning of the able judges in the Barry and Rodes cases, they would, if this case had been before them, have found the defendant guilty on the facts proven, and doubtless the distinguished lawyers who practiced in those cases would have been surprised at any other finding. I sincerely desired that a state of facts would be established which would authorize me to vote against the defendant's removal from office, but this has not been done. To do so I would, in effect, say that perjury or false swearing by a clerk of a court, in the course of his duties as such, was no offense, if it was detected, and the State saved from being defrauded. I would, in effect, say to the clerks of all the courts of the State: "You can make false reports of the collections and disbursements of public moneys with impunity, unless thereby you succeed in defrauding the State." In my opinion, to so vote would be to reflect upon the judgment and wisdom of the framers of our various Constitutions in conferring upon this court the jurisdiction to try cases like this one. For the reasons given, I think the defendant should be removed from the office of clerk of the Fayette County Court.

Whole court sitting.