## Commonwealth ex rel. Atty. Gen. v. Furste.

Nov. 21, 1941.

Hubert Meredith, Attorney General, and Jesse K. Lewis, Assistant Attorney General, for complainant.

Charlton B. Thompson and Robert C. Simmons for respondent.

OPINION BY JUDGE THOMAS—Judgment in accordance with opinion.

This is an original proceeding filed in this court on September 20, 1941, by the Commonwealth, on relation of its Attorney General, and by Albert R. Keller, as prosecutor, against respondent, Sam Furste, the present County Court Clerk of Kenton County, under the jurisdiction conferred by Section 124 of our present Constitution, and the practice as outlined in Title XII of our Criminal Code of Practice, being its Sections 442 to and including 450. Complainants averred three specific charges for the relief sought, and which are: (1) That respondent was then and had been since January 1, 1930, the duly elected, qualified and acting clerk of the Kenton County Court, and that continuously since then—and especially so since his taking office for his second term beginning the first Monday in January, 1934,—in making the required reports to the Auditor of the Commonwealth, which the enacted law requires him to do, "wilfully, knowingly, intentionally, unlawfully and for the corrupt purpose of obtaining profit and gain to himself," falsely reported collections of fees and charges for the rendition of services required of him as the county court clerk of his county in a much smaller sum than he had actually collected, and that he had failed altogether to report some fees and charges required by law which he had collected. It is then averred that he did so for the purpose of gain to himself and to appropriate personally the funds thus collected and unreported. This charge is couched in apt language and with strict particularity, and it closes with the statement that the total amount so obscured and concealed by respondent was $14,332.64; none of which had he ever paid or in any manner offered to pay to any state agency entitled thereto; (2) that respondent charged and collected $6 for issuing each marriage license and reported but $5, the amount fixed by the statute as the correct charge, and (3) that respondent fraudulently reported during his

first term of office from January, 1930, to December 31, 1933, the employment of his wife as a deputy under him and paid her a salary of $200 per month, and that he also had employed his brother, George Furste as another deputy, when neither of them rendered any services and that his pretended employment of his kinsmen and members of the family was for the purpose of appropriating their alleged salary to his own use.

Respondent has entered a plea of not guilty and some evidence has been taken and filed by both parties to the litigation, and by stipulation the transcribed evidence heard at an examining trial before the county judge of Kenton county on a warrant charging respondent with embezzlement, was agreed to be considered on this hearing in this court. The case turns on the factual issue as to whether or not the proof adduced sustains any of the charges made in the complaint, and if so are such charges so sustained sufficient to authorize this court to remove respondent from office for the remainder of his present term?

The first section (442) of Title XII of the Criminal Code of Practice (hereinbefore referred to) prescribes that the accused clerk in this character of proceedings may be removed for any of "the following causes * * *: 1. Any act, omission or neglect by such clerk for which the Statutes have prescribed a forfeiture of office," and "2. Any *malfeasance* in office or neglect of official duty that the court may consider sufficient cause of removal." (Our emphasis.) In the practice of the case respective counsel appear to have eliminated cause (1)—the reason for which, no doubt, is that we have been cited to no statute expressly prescribing that a convicted county court clerk, in addition to other penalties prescribed, shall forfeit his office for any of the acts and conduct charged in the complaint as a part or consequence of the prescribed punishment. Cause (2), it will be observed, mentions but one specific ground, i. e., malfeasance in office; but following language in the section referred to broadens the grounds authorizing this court to remove such an officer by adding the words "or neglect of official duty that the court [this court] may consider sufficient cause of removal."

The evidence in the case is practically uncontradicted, and it conclusively establishes these facts: That respondent was first elected county court clerk of his

county in 1929 for a full term of four years. He was re-elected in 1933 for a succeeding full term, and again in 1937 for another full term, and in 1941 he was elected for a fourth full term in which he will be installed on the first Monday in January, 1942; that from the beginning of his taking charge of the office, in his monthly reports made by him to the Auditor of Public Accounts up to the time of the enactment of what is known as our "Reorganization Act," Kentucky Statutes, Section 4618-1 et seq., and thereafter, he failed to report various fees and charges prescribed by statute for such official services, but that he entered such omitted items on a separate book kept in his office and deposited such unreported items in the vault to his office to be disposed of as might thereafter be determined in some sort of proceeding or hearing by some authorized agency or tribunal possessing the right to so determine. He was asked what items he thus failed to report to the Auditor or other state authority, and he stated that they were: "Extra descriptions in deeds and mortgages, extra notary's certificates, assignments on chattel mortgages, and a service charge that all the clerks had charged for stamping chattel mortgages, which were prepared by the different companies giving our file number in order to complete the copy of records at that office, so that both our file number and their number would correspond."

In September, 1940, three examiners representing the Auditor's office—after rumors had been circulated that defalcations had occurred in respondent's office—presented themselves and informed respondent of their purpose to audit his books, and then for the first time did he give the information to any functionary of the state, or to any other person than those employed in his office, that he had retained the fees referred to (and which he had not reported), and that he then had in his vault the accumulations of which amount to the sum hereinbefore stated. He, thereupon offered to confirm his statement by inviting one of the officers to look into the vault, but that invitation was declined. The same officer later consulted the Attorney General and obtained from that officer the sections of the Statutes requiring such retained fees to be reported and accounted for by respondent, and following that, after the report of the auditors had been completed, respondent gave his check

362

for the entire amount of the fees that he had so retained, and which he had not reported, together with 6% interest thereon, and 10% penalty, aggregating $18,332.64—respondent stating that after he learned that he was liable for the aggregate amount of the fees he had retained and not reported, and that the state was entitled thereto—he deposited the funds theretofore kept in his vault to his official account, upon which he drew the check in payment of the sum referred to.

The only excuse given by respondent for his failure to report, pay over and account for the fees he retained in the manner indicated was, that since 1934 where, under the provisions of Section 106 of our Constitution, Kenton County had a population exceeding 75,000 and the county court clerk received a fixed salary (instead of being compensated under the fee system as is done in counties having a less population) he and his chief deputy upon whom he exclusively relied (but who is now dead) entertained grave doubts as to who or what department of state was entitled to the charges and fees he had collected and retained in his vault unreported to the Auditor, and that he was holding the collections until that question could be determined. However, throughout the entire period of the accumulation of the sum, for which he eventually acknowledged liability and paid, he never inquired of any attorney, or of the Attorney General for the state, or of the Commonwealth's Attorney of his judicial district, or of his county attorney, or any circuit judge of his district or individual, seeking advice as to what should be done with the accumulated sum that he had collected, but not reported, and which he was retaining in his vault.

The case of Commonwealth v. Chinn, 110 Ky. 527, 62 S. W. 7, 685, was a proceeding of the same nature and to accomplish the same purpose as is this one. The alleged defalcations therein, as we interpret the opinion, were far less blamable and the excuse therefore offered by respondent much more appealing than they are made to appear in this case. The only evidence of any incorrupt motive on the part of the respondent herein is.*his* statement of what he eventually intended to do with it, plus the fact that his deputies knew how it had accumulated—but there is no evidence that any other individual possessed such knowledge. Refuting that tendered amelioration is the bald and undisputed but admitted

fact that much, if not all of the charges and fees so collected and retained, were required by statute to be reported by respondent to the proper department of the state government, and to make payment thereof, either contemporaneously with making the report or within the allowed time thereafter—neither of which was done by him.

Respondent appears to possess more than average intelligence. He has had wide experience in various public positions held by him before being elected county court clerk, and his work therein, no doubt, broadened his knowledge of his duties, and if his statement that he harbored no unlawful designs, or did not intend to personally benefit by the acts we have described, should be held to be a legal excuse so as to exonerate him from any felonious intention, still he is subject to removal if he conducted his office "so negligently or carelessly or recklessly as to show an utter want of care or of concern, and such as would be tantamount to a fraud, and therefore could be said to be fraudulently done," and be guilty of a malfeasance. Commonwealth v. Wood, 116 Ky. 748, 76 S. W. 842, 843. However, if the defense interposed should prevail then any officer, or other violator of the law, could render the same excuse and become exonerated from all penalties and other consequences prescribed by law. Therefore, if we should conclude to throw the mantle of charity around respondent because of the high reputation he proved upon this hearing— both as an officer and as an individual—and adjudge him guiltless of a purpose to convert the unreported fund to his own use, based solely on his denial thereof, then there would still remain his admitted gross negligence, carelessness and recklessness so "as to show an utter want of care or of concern, and such as would be tantamount to a fraud, and therefore could be said to be fraudulently done" so as to constitute malfeasance. Wood case, supra.

Because of the forthright reputation which respondent's testimony established for himself, both personally and officially, and his official and individual popularity with his neighbors, acquaintances and constituents, growing out of the accommodating way and manner he conducted his office—plus the high character of the witnesses who gave such testimony—we have given this case, perhaps, more than ordinary attention, with the

364

purpose to discover some legal excuse for respondent's conduct in the premises. But his own testimony refutes any possible ground for holding him guiltless, and forces upon us the inescapable conclusion that the proof convicts him at least of malfeasance, committed by his reckless negligence and carelessness in the conduct of his office. The law exacts from all of its public officers efficiency, promptness and uprightness in the performance of their public duties, and we would fail in the performance of our task were we to interpret it so as to defeat that purpose. It is unanimously concluded that charges (2) and (3) are neither of them established by the proof sufficiently to be effective in granting the relief prayed for.

Wherefore, it follows that the motion of the complainant filed herein is sustained, and respondent is adjudged to be removed from his present term of office, but which will not affect his right, as the clerk elect, to serve for the approaching full term beginning on the first Monday in January, 1942.

The whole Court considered this case, with five of its members supporting the conclusions expressed in this opinion; whilst the other two were of the opinion that the facts were sufficient to condone respondent's acts so as to authorize a finding that he was guiltless of the charges preferred against him in the complaint.