———o o o———

## CREAL *v.* CITY OF KEOKUK.

The city of Keokuk is authorised by its charter to establish and regulate the grade of streets.

A city authorised to establish and regulate the grade of streets, is not liable for damages growing out of the proper exercise of that authority.

The power to regulate the grade of streets comprises the power to change the grade, without incurring liability for the prudent exercise of that power.

### Appeal from Lee District Court.

*Opinion by* KINNEY, J. The plaintiff filed his petition, claiming three hundred dollars damages for being compelled to raise his brick store house, in block twenty-eight, in the city of Keokuk, in order to suit the grade of Main street, as established by the city council. He alleges that he was subjected to the above damages in consequence of a change in the grade made by the city after he had built his store house, and by which he was governed in the erection

of said building.  To this the defendant answered that the city was not liable to pay any damages that the plaintiff indirectly or consequentially sustained by reason. of the establishment of any grade on Main street, or any change of the same.  The city denies all plaintiff's allegations, claims the power to make proper grades of the streets, or make discreet changes of the same, to suit the public good or convenience, and this without liability.  If any grade has been established or changed, as alleged, defendant insists that the same was done under the charter of the city of Keokuk, and by virtue of the action of the city council of said city, all in pursuance of the authority delegated in said charter. The defendant denies all liability, and contends that the power to establish and regulate grades has been clearly delegated and prudently exercised.  To this answer the plaintiff demurred for the following cause : That the defendant, by law, is liable for damages which are the natural and usual consequences of establishing a grade of the street, and also for changing an established grade.

This demurrer was overruled by the court below.  This it is contended by the plaintiff is error.

The questions presented by the record were argued at length, and with much ability.  Most of the cities in Iowa, on the Mississippi river, being deeply interested in the result of this decision, its importance has been fully felt by the court, the case has been held under advisement, and the authorities examined with much care.  Two questions are raised.

1. Is the city liable for damages in consequence of establishing and grading in a skillful and prudent manner the streets.

2. For changing a grade once established.

The city of Keokuk is a municipal corporation.  The legislature has given it a charter containing certain powers. If that act of the legislature is constitutional, (and this is not doubted,) it has a right to exercise, in a proper way, all the powers contained in the charter.  Being created by

Creal *v.* City of Keokuk.

law, and possessing only such powers as are conferred, its acts must be confined within the limits prescribed by the authority which gave it existence. Beyond these it cannot go, but may exhaust all the power which has been bestowed.

If in the attempt to exercise its corporate rights, it has exceeded the power delegated, or exercised what it rightfully possessed in an imprudent and unskillful manner, it is liable for all damages which have been occasioned by such assumed or improper exercise of power. To ascertain its authority to grade, we must look into the charter, § 22. "The city council shall have exclusive power to *establish* and *regulate* the grade of wharves, streets and banks along the Mississippi river within the corporate limits of said city." Here then we find the power to establish the grade. When exercised to the damage of a citizen, is there a corresponding liability to pay these damages? Not according to the English authorities, and state decisions from the most respectable courts of this country. A city corporation is made absolutely necessary in consequence of a large number of persons congregating to do business at a particular point. Those general laws which afforded ample protection when they were scattered over a large scope of country, are not sufficient when they are thrown in closer proximity. The strong can more easily oppress the weak, the vile corrupt the virtuous, and the villain prey upon the honest and unsuspecting. New interests spring up, commerce requires protection, business points must be made accessible, population increases, and hence there arises a *necessity* for another subdivision of government, for which a charter is obtained and a city incorporated. All the citizens alike are partners in this new organization, and each must contribute a proper proportion of the expense to carry it on.

All have consented to the terms or stipulations of the articles of incorporation, (the charter,) and each citizen has yielded up so many of his natural rights as are inconsistent

VOL. IV.——5

with this their organic law. For this he secures additional protection, new facilities for transacting business, and increased value of property, which is the natural consequence. Every man who afterward becomes a citizen of the place, becomes a member of the corporation and consents to the provisions and powers, as well as the liabilities, contained in the charter. One of these express provisions authorizes the city or common council (which is but the citizens in their representative capacity) to establish the grade of the streets in the city. This was agreed to by the parties to the compact, and considered essential to the enjoyment of property and advancement and prosperity of the city. Did they agree that they would pay all damage which might accrue in consequence of the exercise of this power? Was this a condition attached to the act of incorporation? Not at all. If the power then exists without restriction or liability, none can now be attached. If their own law has not provided a remedy where are we to look for one? There is none in statute, none at common law, except in form *ex delicto.* There is no complaint that the city has *tortiously* established the grade, but on the contrary the demurrer admits it was done by virtue of the charter in a prudent manner.

It being for the mutual benefit of all that this power should exist and be incorporated into the charter, and the grading of the streets being necessary for the convenience of all, every man surrendered for his own good all objection to the prudent exercise of this power. But the city must act cautiously and skillfully in making her grades or the charter will afford no protection, for if the city abuses its powers, or uses them for other purposes than those expressly designed, she cannot shelter herself behind her charter, but is liable the same as an individual who proceeds without authority. In the case of *Callender* v. *Marsh,* 1 Pick. 418, Parker, Ch. J., says in relation to the surveyor of the city of Boston : " It is his duty to see that the road is made passable, safe and convenient, and this he is obliged to do

Creal *v.* City of Keokuk.

by filling up low places and reducing hills, in which duty he must act with discretion, for he acts at his peril. If the public safety and convenience require a leveling of the road, he must do it with as much care in relation to property bordering on the road as it is possible for him to use, and if he shall abuse his authority by digging down and raising up where it might not be necessary for the reasonable repair and amendment of the road, he would be amenable to any suffering party for his damages." We adopt this language of the Chief Justice as entirely applicable to ' the principle involved in this case, to wit : that the liability only exists when the power shall be incautiously exercised. This is the doctrine of the books. See the above case in full ; also 1 Chitty's Pleading, 77 ; *Sutton* v. *Clark*, 6 Taunt., 28 ; *British Plate Manufacturing Company* v. *Meredith*, 4 Deva., 789 ; *Harris & Williams* v. *Mayor Knoxville*, 1 Hump. 403 ; *Wilson* v. *Mayor New York*, 1 Dana, 595 ; 4 Sergeant & Watts, 444 ; 9 *ib.*, 382 ; *St. Louis* v. *Genno*, 12 Mo., 414 ; *Taylor* v. *St. Louis*, 14 Mo., 20 ; 14 Conn., 146.

These authorities show conclusively that the city of Keokuk is not liable for consequential damages for grading her streets, if the work is performed with skill and prudence. Chief Justice Parsons says in the well considered case of *Callender* v. *Marsh*, that streets when rightfully laid out are to be considered as purchased by the public of him who owned the soil, and by the purchaser the right is acquired of doing every thing with the soil over which the passage goes which may render it safe and convenient ; and he who sells may claim damages, not only on account of the value of the land taken, but for the diminution of the value of the adjoining lots, calculating upon the future probable reduction or elevation of the street or road. And all this is a proper subject for the inquiry of those who are authorized to lay out, or of a jury, if a party should demand one. And he who purchases lots so situated for the purpose of building upon them is bound to consider the contingencies which

may belong to them. Therefore when Creal purchased his lot, he bought subject to the power to grade, and was supposed to count the chances of the damages which might result from grading.

But it is said that the city has no right to alter the grade without paying all damages which may be sustained by such alteration. Upon this question we have had some difficulty. Not that there seems to be any difference in principle in any of the authorities between grading and changing the grade after it is established, but there seems to be an unreasonableness and an apparent injustice in permitting a city after she has fixed the grade, and invited persons to build to it as fixed, to re-grade greatly to the damage of those who have been governed by it, without requiring the city to pay such damage. We were in hopes that we could from the authorities lay down a rule which would compel the city to pay damages consequent upon re-grading. But it is lamentably true that in nearly every state in the Union, where this question has been adjudicated, there seems to be no distinction upon the question of damages between grading and re-grading. If the question was *res integra*, or if the great weight of authority were not to the contrary, and we were now called upon for the first time in our state to settle the law, we should unhesitatingly decide in favor of compensation. But we must yield to the authorities, unjust as we believe the doctrine to be. The charter gives the city the power to establish and *regulate* the grade. It seems to be well settled that the power to re-grade is as absolute as the power to grade. Pennsylvania, Massachusetts, New York, Connecticut, Tennessee, and Missouri, have all decided this question in favor of the construction contended for by the city. In *Matter of Funnon Street*, 17 Wend., 668, chief justice Bronson says the authority to regulate, level and pave streets is a continuing power, or one which does not cease the moment it is executed. It was given for the purpose of promoting the

Creal *v.* City of Keokuk.

public safety and convenience, and although the power should never be exercised copiously or upon light circumstances, yet there is no doubt that the corporation may change the level of any street even after it has been paved or otherwise prepared for public use.  Chief justice Parsons says those who purchase house lots bordering on streets are supposed to calculate the chances of such elevations and reductions as the increasing population of the city may require. In *Taylor* v. *Corporation of Georgetown*, 6 Wheat., 593, the supreme court of the United States decide that the power given to the corporation of Georgetown by the act of Maryland, 1796, to graduate the streets of that city is a continuing power, and the corporation may from time to time alter the graduation so made. We are also cited to the case of *Hoffman* v. *City of St. Louis*, in manuscript.  The plaintiff built a valuable house in the city to correspond with the grade as then established.  A second grade was made and the property seriously damaged.  The court decided that the power to regulate existed, and that the city was not liable for re-grading or changing the grade, and that the same principle applied to re-grading as to grading.

We find no case strictly in point opposed to these numerous authorities except those referred to by counsel for appellant found in the Ohio reports.  They stand almost or quite alone, and although we believe them right according to our views of justice, still they are not sustained by the British or American authorities.  We have not time, neither is it necessary, to review them.  While we may admire the independence of the supreme court of that state, we cannot adopt her decisions when so many courts, for which we have as much respect, hold a different doctrine.

Judgment affirmed.

*Reeves* and *Miller*, for appellant.

*J. M. Love* and *J. W. Rankin*, for the city.